## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*,[1]<br><br>                   Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered) |
| LORI BUCKLEY, GAYLE ZECH,<br>ROBERTA MARTINEZ, JENNIFER<br>JACKSON, and JAMES DAVIES<br>on behalf of themselves and all others<br>similarly situated,<br>                   Plaintiffs,<br><br>      v.<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION,<br><br>                 Defendants. | Adv. Pro. No. 22-50387 (CTG)<br><br>Related to Docket No. 16 |

## FIRST GUARANTY MORTGAGE CORPORATION'S
## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

First Guaranty Mortgage Corporation ("FGMC" or "Defendant"), by and through its undersigned counsel of record, files this *Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Related Relief* (D.I. 16) (the "Motion") filed by the above-referenced plaintiffs (the "Plaintiffs") and in support states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The location of the corporate headquarters and the service address for First Guaranty Mortgage Corporation is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

# TABLE OF CONTENTS

I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ........................1

II.  SUMMARY OF THE ARGUMENT.....................................................................................2

III. COUNTER-STATEMENT OF FACTS IN RESPONSE .......................................................3

IV. LEGAL STANDARDS........................................................................................................4

V.  ARGUMENT ......................................................................................................................5

A. By Failing to Carry Their Burden, Plaintiffs Have Prevented the Court from Being Able to Perform the Rigorous Analysis It Must and Rendered Certification Improper. ..................5

B. The Proposed Class Is Not Adequately Defined or Clearly Ascertainable, and Plaintiffs Have Not Proposed a Manageable Way to Identify Class Members. .....................................9

C. Common Issues Do Not Predominate. ...............................................................................11

    1. Whether a Remote Employee's Single Site of Employment Was the Plano Facility Is an Individual Inquiry. ......................................................................................................12

    2. The Paucity of the Record Demonstrates Plaintiffs Have Failed to Carry Their Burden of Establishing the Predominance Requirement Is Satisfied. ............................15

D. Plaintiffs Have No Classwide Method of Calculating Damages. .....................................17

E. Plaintiffs Are Atypical Class Representatives..................................................................18

F. Fundamental Intra-Class Conflicts Present an Adequacy Problem..................................19

VI. CONCLUSION ...............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................13, 19

*Austen v. Catterton Partners V, LP*,
    268 F.R.D. 146 (D. Conn. 2010) ................................................................15, 16

*Baby Neal for and by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994).....................................................................................18

*Bader v. Northern Line Layers, Inc.*,
    503 F.3d 813 (9th Cir. 2007) ..............................................................................14

*In re Blood Reagents Antitrust Litig.*,
    783 F.3d 183 (3d Cir. 2015)..................................................................................7

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015), *as amended* (Apr. 28, 2015)...................................9

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013).......................................................................9, 10, 11

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
    143 F.3d 139 (3d Cir. 1998)...........................................................................14, 15

*Coleman v. Commonwealth Land Title Ins. Co.*,
    318 F.R.D. 275 (E.D. Pa. 2016)..........................................................................15

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)......................................................................................*passim*

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012).................................................................................19

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*,
    431 U.S. 395 (1977)..............................................................................................8

*Ferreras v. Am. Airlines, Inc.*,
    946 F.3d 178 (3d Cir. 2019).................................................................................13

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) ................................................................................6

122566009

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ................................................................................8, 17

*Heinz v. Dubell Lumber Co.,*
    Civil No. 19-8778, 2020 WL 1030785 (D.N.J. Mar. 3, 2020) .................................10

*Hoover v. Drivetrain LLC,*
    No. AP 20-50966, (D.I. 52) (Bankr. D. Del. Jan. 14, 2022)....................................16

*Hoover v. Drivetrain LLC,*
    No. AP 20-50966, 2022 WL 3581103 (Bankr. D. Del. Aug. 19, 2022)...................6, 8, 16, 17

*In re Hydrogen Peroxide Antitrust Litig.,*
    552 F.3d 305, 318 (3d Cir. 2008), as amended (Jan. 16, 2009).......................*passim*

*In re Initial Pub. Offerings Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006)..............................................................................7

*Johnston v. HBO Film Mgmt.,*
    265 F.3d 178 (3d Cir. 2001)............................................................................4

*In re Kaiser Grp. Int'l, Inc.,*
    278 B.R. 58 (Bankr. D. Del. 2002) ...................................................................4

*Likes v. DHL Exp.,*
    288 F.R.D. 524 (N.D. Ala. 2012)................................................................11, 15, 19

*Marcus v. BMW of N. Am., LLC,*
    687 F.3d 583 (3d Cir. 2012) .......................................................................*passim*

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    259 F.3d 154 (3d Cir. 2001)..........................................................................7, 8

*Reyes v. Netdeposit, LLC,*
    802 F.3d 469 (3d Cir. 2015)............................................................................7

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016)....................................................................................12

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)................................................................................5, 6, 7

**STATUTES**

11 United States Code
    § 502(d)................................................................................................3, 20

29 United States Code
    § 2101........................................................................................................................11
    § 2101(a)(2)...............................................................................................................5
    § 2101(a)(3)...............................................................................................................5
    § 2101(a)(3)(B) ...............................................................................................12, 13
    § 2101(a)(3)(B)(i)(I)-(II)..........................................................................................5

## RULES AND REGULATIONS

20 Code of Federal Regulations
    § 639.3(i)(6) ............................................................................................................14

29 Code of Federal Regulations
    § 639.1(a) .................................................................................................................5

Federal Rules of Bankruptcy Procedure
    Rule 7023 .................................................................................................................4

Federal Rules of Civil Procedure
    Rule 23 .............................................................................................................*passim*
    Rule 23(a) .........................................................................................................*passim*
    Rule 23(a)(4) ................................................................................................19, 20
    Rule 23(b) ........................................................................................................*passim*
    Rule 23(b)(3).....................................................................................................*passim*

## OTHER AUTHORITIES

5 James Wm. Moore et al., *Moore's Federal Practice*
    § 23.61 (3d ed. 2008) ...............................................................................................6

## I.    <u>STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING</u>

Plaintiffs brought this adversary proceeding and seek damages for alleged violations of the Worker Adjustment and Retraining Notification ("WARN") Act on behalf of themselves and a proposed class of more than 400 individuals who were separated from employment on June 24, 2022, six days prior to the June 30, 2022 Petition Date in these Chapter 11 cases. On that date, certain FGMC employees received a written WARN Act notice, as well as payment of all wages and all paid time off ("PTO") in accordance with company policy. Subsequently, more than 200 separated employees received severance payments, notwithstanding the absence of a formal company policy. These payments, which collectively totaled $857,000 were significant and strained FGMC's already diminished cash position.

FGMC filed its Answer and Affirmative Defenses (D.I. 15) on September 30, 2022. Pending before this Court is Plaintiffs' October 14, 2022 Motion for Class Certification and Related Relief (D.I. 16), which asks the Court to certify a class of all employees who were separated from employment on June 24, 2022, and for the 30 days preceding that date. Specifically, the class that Plaintiffs seek to represent (the "Class") includes:

> All persons (i) who worked at, received assignments from, or reported to one of the Facilities (ii) who were terminated without cause on or about June 24, 2022 and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered on or about June 24, 2022, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5) and (iv) who have not filed a timely request to opt-out of the class.

(D.I. 16 at 1-2). In the Motion, Plaintiffs submit that they and the proposed Class satisfy not only Rule 23(a) of the Federal Rules of Civil Procedure (the "Rules")'s requirements of numerosity, commonality, typicality, and adequacy, but also Rule 23(b)(3)'s requirements of predominance and superiority. But, for the reasons set forth below, Plaintiffs have failed to carry their burden of proof and the Court should deny the Motion, with prejudice, for several reasons.

122566009

## II.    SUMMARY OF THE ARGUMENT

1.      First, by failing to provide evidentiary support that establishes the requirements of Rule 23(a) and Rule 23(b)(3) have been met, Plaintiffs have not carried their burden of proof. By not offering any evidence beyond the allegations of the Complaint, which are merely repeated in conclusory declarations of the named Plaintiffs and counsel, Plaintiffs are submitting that certification is proper on the pleadings; however, that is not the law. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008), *as amended* (Jan. 16, 2009) ("the requirements set out in Rule 23 are not mere pleading rules"). When there is insufficient evidence in the record, the Court cannot conduct the "rigorous analysis" that is required, and there is no basis to support a conclusion in favor of certification that would survive appellate review. This Motion is precisely the type of "premature certification determination" that Rule 23 neither requires nor encourages. *Id.* at 318. As such, Plaintiffs' Motion should be denied.

2.      Second, the proposed class sought to be certified is not clearly defined or objectively ascertainable as required by law. In fact, Plaintiffs fail to address this element at all, which is reason alone to deny the Motion. Moreover, there is no "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition" because, among other things, determining whether someone "worked at, received assignments from, or reported to one of the Facilities" is full of individualized issues and, for each former employee, would require a mini-trial to determine whether they fall within the class definition. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (holding the mechanism is not administratively feasible "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials'").

3.      Third, common issues do not predominate. Whether a remote employee's single site of employment was the Plano, TX facility (the "Plano Facility") is an individual inquiry for each remote employee, which is incapable of being answered with classwide evidence. The Motion, in fact, is devoid of any evidence that could lead the Court to conclude that the all-important, threshold question of whether the hundreds of remote employees potentially included

122566009

in the Class were treated alike in the relevant respects are susceptible to common proof; instead, each remote employee's individual circumstances and arrangements with FGMC will require individual evidence and proof. Additionally, Plaintiffs have no classwide method of calculating damages. In fact, Plaintiffs chose not to present any classwide method of damages at all, much less evidentiary support for such a methodology. Finding that Plaintiffs have satisfied their burden in these circumstances would render Rule 23(b)(3)'s predominance requirement a nullity. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

4. There are several additional reasons why Plaintiffs' request for certification of this Class should be denied. The named Plaintiffs assert that they reported to the Plano Facility yet seek to include employees who worked at or reported to FGMC's Ft. Worth, TX facility (the "Ft. Worth Facility") and Henderson, NV facility (the "Henderson Facility"), neither of which had the requisite number of employees (100) or terminated a requisite number of employees (50) to trigger WARN liability. *See* Declaration of Aaron Samples attached hereto as Exhibit A (the "Samples Declaration"). In fact, as of June 24, 2022, those facilities employed less than 100 employees each and terminated less than 50 each. *See* Ex. A (Samples Declaration) at ¶¶ 8-9. Moreover, given the single-site-of-employment issue, the named Plaintiffs' claims (who are all remote employees) are not typical of other class members' claims (some of whom are *not* remote employees). Because the legal theory upon which the named Plaintiffs' WARN Act claims are based is fundamentally different from, and atypical of, the legal theory upon which WARN Act claims of many other unnamed class members would be based, Plaintiffs are atypical class representatives and the adequacy requirement of Rule 23(a) cannot be met.

## III.   COUNTER-STATEMENT OF FACTS IN RESPONSE

Pursuant to Local Rule 7007-2(b)(E), FGMC's counter-statement of facts will not repeat facts cited in Plaintiffs' opening Motion. FGMC further notes, however, that notwithstanding that every employee, including employees who were separated from employment on June 24, 2022, were served with notice of the October 14, 2022 bar date (Case No. 22-10584, Docket No. 398) only 26 employees filed proofs of claim, and of those, only nine (9) included WARN and requested

priority claim treatment and four others that seek general unsecured status. *See* Claim Nos. 28, 83, 89, 109, 136, 212, 229, 243, 278 (noting WARN and requesting priority claim treatment); Claim Nos. 157, 158, 217, and 221 (noting WARN and filed as general unsecured claims). In total, the maximum priority claim portion of these claims under § 507(a)(4) of the Bankruptcy Code, assuming they are even allowable (which they are not), totals $326,845.24.

## IV.    <u>LEGAL STANDARDS</u>

Rule 7023 of the Federal Rules of Bankruptcy Procedure states that Rule 23 "applies in adversary proceedings." "Whether to certify a class claim is within the discretion of the bankruptcy court." *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002).

In order to certify a class action, the claimant must satisfy the four elements of Rule 23(a), as well as the requirements of Rule 23(b). *Id.* (citing *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir. 2001)). The burden of proof is on the claimant to establish each element, and class certification is proper only "if the trial court is satisfied, after a *rigorous analysis*, that the prerequisites" of Rule 23 are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (emphasis added). While the claimant need not prove the merits of his claim at this stage, he must provide more than bare allegations or conclusory statements to satisfy the requirements of Rule 23. *See Kaiser*, 278 B.R. at 62.

Specifically, the moving party must establish, *with evidence*, that (1) "the class is so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The moving party also must demonstrate that the proposed class is clearly defined and objectively ascertainable, and that a method exists to calculate damages on a classwide basis. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012); see also *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).

Even if all of these prerequisites to class certification are met, a class may only be certified if common questions of law or fact predominate over individual ones, and it is determined that a

122566009

class action is the superior method for fairly and efficiently adjudicating the controversy. Fed. R.
Civ. P. 23(b)(3). Again, as the party seeking class certification, Plaintiffs have the burden of
demonstrating that all the requirements for a class action under Rule 23(a) and (b) have been met
and that the action should be certified as a class action. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.
338, 350 (2011).

In this particular case, Plaintiffs seek to certify a Rule 23(b)(3) class arising from Debtors'
purported violation of the WARN Act. As recognized by the Supreme Court, the "rigorous
analysis" the Court is required to conduct "will entail some overlap with the merits of the plaintiff's
underlying claim." *See id.* at 351; *see also Hydrogen Peroxide*, 552 F.3d at 317-18 (because the
decision whether to certify a class "requires a thorough examination of the factual and legal
allegations," the court's rigorous analysis may include a "preliminary inquiry into the merits," and
the court may "consider the substantive elements of the plaintiffs' case in order to envision the
form that a trial on those issues would take"). The WARN Act requires employers to provide
"affected employees" with at least 60 days advance notice of certain "mass layoffs" and "plant
closings." *See* 29 C.F.R. § 639.1(a). Under the statute, a "mass layoff" is "a reduction in force
[that] results in an employment loss at single site of employment during any 30-day period
for . . . at least 50 employees (excluding any part-time employees)," provided the affected
employees represent "at least 33 percent of the employees" at the affected location. 29 U.S.C.
§ 2101(a)(3)(B)(i)(I)-(II). As relevant here, to establish their WARN Act claims, Plaintiffs and
each member of the proposed class must prove that FGMC laid off at least 50 employees
(excluding any part-time employees) at a single site during a 30-day period. *Id.* §§ 2101(a)(2),
2101(a)(3).

## V.    ARGUMENT

### A.    By Failing to Carry Their Burden, Plaintiffs Have Prevented the Court from Being Able to Perform the Rigorous Analysis It Must and Rendered Certification Improper.

Rule 23 "does not require or encourage premature certification determinations." *In re
Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 318 (3d Cir. 2008), *as amended* (Jan. 16, 2009).

122566009

Rather, "certification is proper only if the trial court is satisfied, *after a rigorous analysis* that the prerequisites of Rule 23(a)," as well as the applicable requirements of Rule 23(b), "have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (cleaned up; emphasis added); *cf. Hoover v. Drivetrain LLC*, No. AP 20-50966, 2022 WL 3581103, at *7 (Bankr. D. Del. Aug. 19, 2022) (after initially denying a plaintiffs' motion for class certification for WARN Act claims, granting certification "[b]ased on the supplemental record presented by the parties following discovery," which contained much more than simply affidavits of the named plaintiffs and counsel).

"The burden of proof rests on the movant," and the rules governing class certification do not "set forth a mere pleading standard." *Hydrogen Peroxide*, 552 F.3d at 316 n.14; *Dukes*, 564 U.S. at 350. In fact, when the Third Circuit expounded upon the "proper standard of 'proof' for class certification" and set forth the specific "principles [to] guide a district court's class certification analysis," its first principle was that "the requirements set out in Rule 23 are not mere pleading rules." *Hydrogen Peroxide*, 552 F.3d at 316 (citing 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.61 (3d ed. 2008) ("A court may not and should not certify a class action without a rigorous examination of the facts to determine if the certification requirements of Rule 23(a) and (b) have been met." (citation omitted)); *see also Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 365 (4th Cir. 2004) ("If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied." (citations omitted)).

To facilitate the rigorous analysis the Court is required to conduct, proponents of class certification must support their positions with *evidence* rather than mere allegations or attorney arguments. Plaintiffs "must be prepared *to prove* that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.," *Dukes*, 564 U.S. at 350 (emphasis added), and

"[t]he party must also satisfy *through evidentiary proof* at least one of the provisions of Rule 23(b)," *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis added); *see also Hydrogen Peroxide*, 552 F.3d at 318 (while absolute proof is not required, Plaintiffs must show that the requirements of Rule 23 are met by a "preponderance of the evidence"); *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015) ("We stress . . . that the preponderance of the evidence standard governs."). The Third Circuit has actually gone further, holding that, even where expert testimony is offered in support of certification, certification is nevertheless improper if the expert testimony is inadmissible, thereby indicating that the evidence the proponent submits to demonstrate that the Rule 23 requirements are met must also be admissible. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015).

Because the evidence and arguments a district court considers in the class certification decision call for rigorous analysis, a party's mere assurance to the court that it intends or plans to meet the requirements is insufficient. *Hydrogen Peroxide*, 552 F.3d at 318; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) ("[T]he requirements of Rule 23 must be met, not just supported by some evidence.") (cited in *Hydrogen Peroxide*). Plaintiffs, therefore, "must affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.," *Dukes*, 564 U.S. at 351; *see also Reyes*, 802 F.3d at 487 (instructing that, "[o]n remand, the District Court should consider whether this evidence, if accepted as credible, is sufficient to conclude that there is 'actual, not presumed, conformance' with Rule 23"). If the Court finds that there are "serious problems" with the evidence presented (or the complete lack thereof), the Court should "not certify the class merely on the assurance of counsel that some solution will be found." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (quoting *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977)); *see also Hoover v. Drivetrain LLC*, No. AP 20-50966, 2022 WL 3581103, at *9 (Bankr. D. Del. Aug. 19, 2022) (excluding certain groups of employees from the certified class given "the paucity of the record before the Court," reasoning that the plaintiffs "have not met their burden of showing how a class that

includes employees in the defendant's marketing and general and administrative departments would satisfy the predominance requirement").

By not offering any evidence beyond the allegations of the Complaint, which are merely parroted in conclusory declarations of the named Plaintiffs and counsel, Plaintiffs are submitting that certification is proper on the pleadings; however, that is not the law. *Hydrogen Peroxide*, 552 F.3d at 309 ("the requirements set out in Rule 23 are not mere pleading rules"). When there is no evidence in the record, the Court cannot conduct the "rigorous analysis" that is required, and there is no basis to support a conclusion in favor of certification that would survive appellate review. This is precisely the type of "premature certification determinations" that Rule 23 neither requires nor encourages. *Id.* at 318. As detailed throughout this Opposition, Plaintiffs' failure to provide evidentiary support establishes that several Rule 23 requirements have not been—and cannot be— met at this juncture for this proposed Class.

Moreover, Plaintiffs' suggestion that WARN claims are "especially appropriate" for class certification is of no moment and, in fact, an invitation to error. *See Hydrogen Peroxide*, 552 F.3d at 318 (holding that a district court should not "relax its certification analysis, or presume a requirement for certification is met, merely because a plaintiff's claims fall within" a category of cases where class certification often is proper). Instead, the Third Circuit made clear that "[a]ctual, not presumed, conformance" with the Rule 23 requirements remains necessary and "indispensable." *Newton*, 259 F.3d at 167 (3d Cir. 2001) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977). Even if this Court and others have certified class actions asserting claims under the WARN Act in the past, the fact remains that, as detailed throughout this Opposition, Plaintiffs have completely failed to carry their burden of proof *in this case*, preventing the Court from being in a position to perform the rigorous analysis the Supreme Court demands and, therefore, rendering certification *of this Class* improper under the circumstances.

8

**B.      The Proposed Class Is Not Adequately Defined or Clearly Ascertainable, and Plaintiffs Have Not Proposed a Manageable Way to Identify Class Members.**

In the Third Circuit, in addition to the explicit Rule 23 requirements, the class must be clearly defined and objectively ascertainable. *Marcus*, 687 F.3d at 591; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (holding not only that "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable," but also that "[t]he rigorous analysis requirement applies equally to the ascertainability inquiry") (citations omitted). Indeed, the Third Circuit has emphasized that "[a]scertainability mandates a rigorous approach at the outset." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). This is because ascertainability serves three "key roles":

> First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class.
>
> Second, it ensures that a defendant's rights are protected by the class action mechanism.
>
> Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

*Id*. Because Plaintiffs' proposed class is not ascertainable, Plaintiffs' certification request does not further any of these three key components of a Rule 23(b)(3) class action lawsuit and, therefore, should be rejected.

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163. Ascertainability also is a distinct inquiry from predominance (detailed below), as "the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Id.* (quotations omitted). Critically, Plaintiffs cannot demonstrate ascertainability without "evidentiary support."

*Carrera*, 727 F.3d at 306 ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.").

The ascertainability analysis here is simplified by the fact that Plaintiffs' Motion does not address the ascertainability requirement at all. In fact, the Motion does not even mention the subject. Where "Plaintiff has left the Court in the dark on ascertainability," which is "an essential prerequisite of a class action," the Court "cannot certify . . . Plaintiff's proposed classes." *Heinz v. Dubell Lumber Co.*, Civil No. 19-8778 (RBK/KMW), 2020 WL 1030785, at *3 (D.N.J. Mar. 3, 2020) (acknowledging that "the Court can judge for itself whether Plaintiff's proposed classes are defined with reference to objective criteria" but nevertheless denying a motion for class certification that failed to address ascertainability because, by failing to address it, "Plaintiff has not carried his burden to show that there is an administratively feasible mechanism for identifying class members"). This is reason alone to deny Plaintiffs' Motion.

Even if the subject were addressed, Plaintiffs' proposed class is not ascertainable. The Class that Plaintiffs seek to represent includes:

> All persons (i) who worked at, received assignments from, or reported to one of the Facilities (ii) who were terminated without cause on or about June 24, 2022 and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered on or about June 24, 2022, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5) and (iv) who have not filed a timely request to opt-out of the class.

Initially, potential class members could not actually identify themselves for purposes of opting out of this proposed class given both the legal analysis to determine whether they "are 'affected employees' within the meaning of 29 U.S.C. § 2101(a)(5)" or "were terminated without cause as the reasonably foreseeable consequences of the mass layoff and/or plant closing," and the ambiguity inherent in determining whether they "worked at, received assignments from, or reported to one of the Facilities." *See, e.g.*, *Likes v. DHL Exp.*, 288 F.R.D. 524, 530 (N.D. Ala. 2012) (finding a proposed class definition not ascertainable because, among other things, "the terms 'mass layoff' and 'plant closing' are not explained in layperson language" but, instead,

122566009

"unhelpfully and inadequately addressed by referencing '20 C.F.R. § 639.3' and '29 U.S.C. § 2101'" in the class definition). As reasoned in *Likes*, when a class definition like this is used, "a potential class member would not be able to determine if he had been let go under an actionable 'mass layoff' or, rather, a less impactful (and inactionable) reduction in force." *Id.* Simply stated, Plaintiffs' proposed class definition lacks precision, is confusingly crafted, and not ascertainable.

Moreover, there is no "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Determining whether someone "worked at, received assignments from, or reported to one of the Facilities" is full of individualized issues and, for each former employee, would require a mini-trial to determine whether they fall within the class definition. *Marcus*, 687 F.3d at 593 (holding the mechanism is not administratively feasible "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'"). With this proposed class definition, there is absolutely no assurance that the parties will be able to identify class members in a manner consistent with the efficiencies of a class action. And, of course, Plaintiffs have not offered any evidentiary support to actually demonstrate that there is a method of successfully ascertaining this class. *See Carrera*, 727 F.3d at 306. Notably, declarations like the ones presented by the named Plaintiffs here[2] cannot sufficiently prove ascertainability either. *Marcus*, 687 F.3d at 594 ("We caution, however, against approving a method that would amount to no more than ascertaining by potential class members' say so."). And forcing FGMC to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would, as the Third Circuit has held, "have serious due process implications." *Id.*

### C.    <u>Common Issues Do Not Predominate.</u>

Even assuming the Rule 23(a) requirements are satisfied here, certification is only proper if the Court finds, after a rigorous analysis, that "questions of law or fact common to class members

---

[2] Here, for example, each of the named Plaintiffs aver, without any factual support, in the same Paragraph No. 5 of their declarations that they were "based out of, received assignments from, and reported to Defendants' facility located at 5800 Tennyson Pkwy Suite 450, Plano, Texas." (D.I. 16-2 at 2, 7, 11, 14, 18).

predominate over any questions affecting only individual members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Plaintiffs have identified a list of what they believe to be a "common core of legal issues," (D.I. 16-1 at 19), but they have ignored central, threshold questions that are individual inquiries unique to this lawsuit and render certification improper here. In this case, each former remote employee's eligibility to bring a WARN Act claim rests entirely on a threshold question that will require separate proof for each remote employee.

The predominance inquiry demands that courts "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods*, 577 U.S. at 453. As the Supreme Court explained, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* (cleaned up). At root, the predominance inquiry asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* To determine whether common issues predominate over individual ones with respect to any particular issue, courts are directed to ask whether resolving the issue will involve looking at the same body of evidence that is applicable to the entire class or, alternatively, involves looking at evidence that will be individualized and "one-off" for each of the class members. *Id.* If answering the question will require examining different evidence as to each member of the class, then individual issues will predominate.

### 1.   Whether a Remote Employee's Single Site of Employment Was the Plano Facility Is an Individual Inquiry.

In arguing that questions of law or fact common to class members predominate over any questions affecting only individual members, Plaintiffs offer a two-sentence rationale: "Here, the essence of the case is the Plaintiffs' and Class Members' common claim that they were terminated by Defendants without cause and without advance written notice in violation of the WARN Act. Predominance is therefore satisfied." (D.I. 16-1 at 23). But that is no predominance analysis at all;

12

in fact, it improperly conflates commonality with predominance, suggesting that the mere presence of common questions of law or fact is sufficient to establish predominance. This is not the law: "The commonality and predominance requirements are closely linked. But the Rule 23(b)(3) predominance requirement is far more demanding than the commonality requirement found in Rule 23(a)." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quotations and citation omitted); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion is far more demanding.").

Plaintiffs' predominance position also ignores the central, threshold issue in this case, which concerns every former remote employee's single site of employment.[3] Through their declarations, the named Plaintiffs seem to suggest that a former employee's single site of employment can be established simply by the conclusory, self-affirming statement that they were "based out of, received assignments from, and reported to Defendants' facility located at 5800 Tennyson Pkwy Suite 450, Plano, Texas," (D.I. 16-2 at 2, 7, 11, 14, 18), but more evidentiary support is required to reach that conclusion (which Plaintiffs do not provide). Here, the central issue is whether the Plano Facility was the "single site of employment" for the named Plaintiffs and the unnamed class members they seek to represent within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(3)(B). For remote employees, the "single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes." 20 C.F.R. § 639.3(i)(6). However, determining a remote employee's single site of employment under section 639.3(i)(6) requires a significant and individualized inquiry, which includes consideration of "the location of the personnel who were primarily responsible for reviewing" the remote employees' work,

---

[3] Because the decision whether to certify a class "requires a thorough examination of the factual and legal allegations," the court's rigorous analysis may include a "preliminary inquiry into the merits," and the court may "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." *Hydrogen Peroxide*, 552 F.3d at 317–18.

122566009

"assess[ing] employee performance . . . and the like." *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 148 (3d Cir. 1998); *see also Bader v. Northern Line Layers, Inc.*, 503 F.3d 813, 821 (9th Cir. 2007) ("The site to which an employee at a remote location reports is the site at which management issues work orders, and directly reviews a remote employee's job performance and work product in order to evaluate progress and set goals."). The *Ciarlante* decision demonstrates that the Court should assess not only "the source of the 'day-to-day' instructions received" by the remote employees, but also "the location of the personnel who were primarily responsible" for assessing remote employees' work performance. *Ciarlante*, 143 F.3d at 147-48.

Given the considerations required, the single-site-of-employment question is an individual inquiry. To answer this question, Plaintiffs must prove (and the Court must assess), among other things, whether the facility was the site from where each remote employee's "work [was] assigned" or the site "to which they report[ed]." 20 C.F.R. § 693.3(i)(6). The first component requires Plaintiffs to show that the Plano Facility—and not any other location—was "the source of the 'day-to-day' instructions received" by FGMC's remote employees. *Ciarlante*, 143 F.3d at 147. In this regard, the Court must not only determine whether each remote employee's day-to-day work was assigned by FGMC's workers at the Plano Facility, by direct managers located at the Plano Facility, by remote direct managers located at other work locations, or otherwise, but also whether a remote employee's direct manager had a single site of employment in Plano or at another location. And the second component is no better. It requires proof that the "personnel who were primarily responsible for reviewing" each remote employee's "performance" were located at the Plano Facility. *Id.* at 148; *see also Bader*, 503 F.3d at 821. To answer these sub-questions, there must be evidence as to individual reporting relationships, structures, and practices (*inter alia*), as well as detailed information regarding how work is assigned and "day-to-day instructions," all of which will be disputed and will require individualized analysis and determination for each former remote employee. Indeed, the Third Circuit in *Ciarlante* held that "a developed factual record" was necessary to resolve these disputed sub-questions, such as the source of day-to-day instructions. *Ciarlante*, 143 F.3d at 147.

14

In short, the single-site-of-employment question is an individual inquiry wrapped in a multitude of other individual inquiries, for which there are not "common answers"; instead, this threshold question for a WARN Act claim can only be answered by considering individualized evidence for each of the class members. Because this central question for the remote employees *in this case* is not capable of being answered with classwide evidence, certification is improper. *See, e.g., Likes*, 288 F.R.D. at 535-36, 540 (refusing to certify a class asserting WARN Act claims because, among other things, "the court finds that the nature of the contested single site of employment issue means that individualized determinations of fact would need to be decided as to each DHL contractor relationship."). Even if there are common questions of law or fact, the critical inquiry is whether that question can be answered for all class members with common evidence, and the answer here is, simply, no. *See Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, 284-55 (E.D. Pa. 2016) (predominance is not satisfied where common question could not "be resolved by a common answer 'in one stroke'").

### 2. The Paucity of the Record Demonstrates Plaintiffs Have Failed to Carry Their Burden of Establishing the Predominance Requirement Is Satisfied.

More fundamentally, Plaintiffs' Motion is devoid of any evidence whatsoever that could lead the Court to conclude that the all-important, threshold, single-site-of-employment question could likely be susceptible to common proof. Plaintiffs, again, have not met their burden. *See, e.g., Austen v. Catterton Partners V, LP*, 268 F.R.D. 146, 147-48 (D. Conn. 2010) (refusing to certify a class asserting WARN Act claims because, without the parties conducting "discovery on class issues," "Plaintiffs have not met their burden of showing, by a preponderance of the evidence, that common questions predominate over individualized ones, at least with respect to the remote employees"). Just as in *Austen*, even if the proposed class members here "share many issues in common, including whether they were employees of Defendants, whether Defendants terminated them without notice in violation of the WARN Act, [or] whether Defendants were a 'single employer' for purposes of WARN Act liability," certification is not proper if the plaintiffs have failed to carry their burden to show that the predominance requirement has been satisfied,

particularly where, as here, the defendant has challenged that, for remote employees, an individualized inquiry will be required that will predominate over all such common issues. *Id.* at 150-53 (noting that, without *evidentiary support*, plaintiffs' predominance argument "is based on conjecture about what the evidence *may* show," which cannot support certification; "the Court sees no reason to certify the class prematurely, before giving Plaintiffs the opportunity to take discovery").

This Court's decision in *Hoover v. Drivetrain LLC* proves this point, and demonstrates why certification of Plaintiffs' proposed class at this juncture is improper. In *Hoover*, the Court initially expressed hesitation in certifying a class prosecuting WARN Act claims where the record evidence was insufficient for the Court to conduct a sufficiently rigorous analysis to answer the question of whether common issues predominate over individual ones in cases where there is a dispute as to whether a certain facility was the "single site of employment" for remote employees within the meaning of the WARN Act. *Hoover v. Drivetrain LLC*, No. AP 20-50966, (D.I. 52) (Bankr. D. Del. Jan. 14, 2022). The Court explained that "the question as the class certification stage is 'what is the body of evidence that addresses the issue,'" and, in its Preliminary Observations on Plaintiffs' Motion for Class Certification and Related Relief, the Court explained that it was not persuaded the plaintiffs had carried their burden of proof in answering that question and establishing predominance. *Id.* Plaintiffs in this case have likewise failed to provide any answer to that question (which this Court plainly indicated is central at the class certification stage) and, as such, the Court should decline Plaintiffs' invitation to issue a premature certification decision. *Cf. Hoover v. Drivetrain LLC*, No. AP 20-50966, 2022 WL 3581103, at *7 (Bankr. D. Del. Aug. 19, 2022) (granting certification "[b]ased on the supplemental record presented by the parties following discovery," which contained far more than simply affidavits). Notably, although the Court ultimately granted certification in *Hoover*, it still excluded certain departments given "the paucity of the record before the Court," reasoning that the plaintiffs still "have not met their burden of showing how a class that includes employees in the defendant's marketing and general and administrative departments would satisfy the predominance requirement." *Id.* at *9.

16

122566009

### D.    Plaintiffs Have No Classwide Method of Calculating Damages.

Plaintiffs also propose no formula for calculating damages on a classwide basis. Instead, Plaintiffs only generically assert that "[t]he calculations [for damages] can be done from the books and records of Defendants, are straightforward, and rest on a finding of liability which can be made commonly." (D.I. 16-1 at 23). Such a general statement, without even an attempt to either propose a damages methodology or actually identify the "books and records of Defendants" that would be used to calculate damages on a classwide basis, comes up woefully short of satisfying Plaintiffs' burden of proving that damages are capable of classwide determination. *See Comcast*, 569 U.S. at 34-35. In *Comcast*, the Supreme Court held that class certification is improper if plaintiffs fail to prove that damages are capable of measurement on a classwide basis and explained that simply accepting "any method of measurement . . . so long as it can be applied classwide, no matter how arbitrary the measurements may be . . . would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* at 35-36. The Court found certification improper because "respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis," and the plaintiffs failed to "present[] another methodology." *Id.* The named Plaintiffs in this case did not just fail to present an alternative methodology, they failed to present the Court with any methodology at all. As a result, the Court cannot conduct the rigorous analysis of the damages model that is required of it. *Id.* at 35. Indeed, finding that Plaintiffs have satisfied their burden in these circumstances would read Rule 23(b)(3)'s predominance out of existence.

While Plaintiffs' total failure to present a classwide method of damages or any evidentiary support for such a methodology is reason alone to deny Plaintiffs' Motion, this is not a mere technical deficiency. The named Plaintiffs themselves were plainly employed under different compensation structures. *Compare* (D.I. 16-2 at 3 (Plaintiff Buckley "earning approximately $125,318 per year")), *with* (D.I. 16-2 at 7 (Plaintiff Zech "earning approximately $394.80 per week")). And the Complaint clearly requests not only "unpaid wages" and "salary," but also "commissions," "bonuses," "accrued holiday pay," "accrued vacation pay," "pension and 401(k) contributions" and "other ERISA benefits." (D.I. 1 at 10 ("Prayer for Relief")). Given the variety

17

of damages requested, and particularly in light of the paucity of the record in this regard, it is plain that questions of individual damage calculations will inevitably overwhelm questions common to the class, rendering certification improper. *Comcast*, 569 U.S. at 34 (2013) (Rule 23(b)(3) predominance requirements are not satisfied where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class").

### E.    Plaintiffs Are Atypical Class Representatives.

Typicality is an explicit requirement of Rule 23(a) and is met when each class member's claims arise from the same event or pattern or practice and are based on the same legal theory as the claims of the proposed class. *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). The Supreme Court has explained that typicality is concerned with whether the named Plaintiffs' claims and the class claims "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. In other words, "[t]ypicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Kanter*, 43 F.3d at 57-58 (cleaned up). Here, there are not mere factual differences between the claims of the named Plaintiffs and those of the class members (as the proposed Class has been defined), rendering the claims of the named Plaintiffs atypical of those of the class.

For one, the named Plaintiffs assert that they reported to the Plano Facility (and only the Plano Facility) yet seek to represent a class that includes employees who worked at or reported to FGMC's Ft. Worth Facility and the Henderson Facility. (D.I. 16 at 1-2 (proposing a class consisting of "all persons (i) who worked at, received assignments from, or reported to one of the Facilities")). Critically, neither the Ft. Worth Facility nor the Henderson Facility had the requisite number of employees (100) or terminated a requisite number of employees (50) to trigger WARN liability. *See* Ex. A (Samples Declaration) at ¶¶ 8-9. Therefore, the legal theory upon which the named Plaintiffs' WARN Act claims are based is fundamentally different from, and atypical of,

18

the legal theory upon which any purported WARN Act claims for employees who allegedly worked at or reported to these other facilities would be based.

Moreover, given the single-site-of-employment issue, the named Plaintiffs' claims (who are all remote employees) are not typical of other class members' claims (many of whom are *not* remote employees and, thus, the same threshold, single-site-of-employment question does not arise). *See Likes*, 288 F.R.D. at 536 (finding, "because of the single site of employment issue," the typicality requirement was not satisfied, explaining that the named plaintiff "has failed to show that his WARN Act claim is, at a minimum, typical of those putative class members who worked . . . at different stations throughout the country" and had different work arrangements).

### F.    Fundamental Intra-Class Conflicts Present an Adequacy Problem.

The adequacy requirement of Rule 23(a) has two components: "(1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The named Plaintiffs have an adequacy problems because, as described above, the legal theory upon which the named Plaintiffs' WARN Act claims are based is fundamentally different from, and atypical of, the legal theory upon which any purported WARN Act claims for employees who either were in-person workers at the Plano Facility or worked at or reported to the Ft. Worth Facility and the Henderson Facility would be based. Moreover, potential intra-class conflicts arise from the wide variety of damages requested and the potential allocation of remedies. *Dewey*, 681 F.3d at 183-84 (adequacy requirement is not satisfied by the simple suggestion that "class members all ha[ve] the same incentive simply because all members of the class wish[] for a maximum recovery," and, further, "[a] conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental and can thus render a representative plaintiff inadequate") (quotations and citations omitted).

122566009

## VI.    CONCLUSION

For the foregoing reasons, First Guaranty Mortgage Corporation respectfully requests that the Court deny Plaintiffs' Motion for Class Certification and Related Relief.


Dated: October 28, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email:  ljones@pszjlaw.com
        tcairns@pszjlaw.com
        mcaloway@pszjlaw.com

-and-

Samuel R. Maizel
Tania M. Moyron
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
 Email:  samuel.maizel@dentons.com
         tania.moyron@dentons.com

-and-

David F. Cook (DE Bar No. 6352)
**DENTONS US LLP**
1900 K Street, NW
Washington, DC 20006
Telephone:  (202) 496-7500
Email:  david.f.cook@dentons.com

*Counsel for Defendants Debtors and Debtors in Possession*

122566009